Eric Blumenfeld, Esq.
**HUGHES HUBBARD & REED LLP**
A New York Limited Liability Partnership
101 Hudson Street, Suite 3601
Jersey City, New Jersey 07302
Telephone:  201-536-9220
*Attorney for Plaintiff Customs and Tax*
*Administration of the Kingdom of Denmark (SKAT)*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SKAT,<br><br>                         Plaintiff,<br><br>vs.<br><br>THE SEA BRIGHT ADVISORS LLC 401K PLAN & MATTHEW TUCCI,<br><br>                         Defendants. | Civil Action No. _____<br><br>Honorable _____<br><br>June 1, 2018<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff SKAT, which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants The Sea Bright Advisors LLC 401K Plan ("**Sea Bright**") and Matthew Tucci ("**Tucci**") as follows:

**I.      PARTIES**

1.      Plaintiff SKAT is the Danish national agency charged with assessing and collecting taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

2.      Defendant Sea Bright is a pension plan, which, in its requests to SKAT for tax refunds, listed its address as 376 Ocean Ave., Sea Bright, New Jersey, 07760, USA.  On

information and belief, each of the members of Defendant Sea Bright is a citizen of a state of the United States. At all times material to the allegations in this Complaint, Defendant Sea Bright purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident in the United States of America for purposes of U.S. taxation.

3. Defendant Trustee is a citizen of a state of the United States. At all times material to the allegations in this Complaint, Defendant Tucci served as the Authorized Representative for Defendant Sea Bright.

## II.     NATURE OF THE ACTION

4. Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

5. This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

6. The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

7. The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

8. The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Sea Bright, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

9. On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

10. As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, United Kingdom, and Luxembourg.

11. On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

12. The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including:

a. The Authorized Representatives of the claimants, such as Defendant Tucci, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b. The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants; and

c. The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

13. The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

14. SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

15. As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

16. As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of at least $4,646,000 (US)[1], plus interest.

## III. JURISDICTION & VENUE

17. Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

18. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

---

1. This amount is the result of a conversion from DKK to U.S. Dollars performed on May 23, 2018, utilizing a conversion rate of 1 U.S. Dollar to 6.3645 DKK.

5

84086261_2

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

19.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority. In this case, the relevant tax authority is SKAT.

20.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.     A double taxation treaty between Denmark and the United States[2] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax. The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

2.  Convention and Protocol between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10, ¶ 2(c), May 6, 1948, S. Treaty Doc. No. 106-12 (effective date Jan. 1, 2001).

**B.     The Fraudulent Scheme**

25.     As a result of its investigation, SKAT has now determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.  The respective roles of each of these participants are described in further detail in paragraphs 32 through 50 below.

**1.     The Fraudulent Refund Claims Process**

26.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

27.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.     Each of the claimants provided the following documentation to SKAT through their designated agents:

   a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

   b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

      i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

      ii.    the amount of the tax refund claim;

      iii.   a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

          iv.      the bank account to which SKAT should pay the claim;

    c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

    d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

    e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29. The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30. It was SKAT's practice to pay claims that included the required supporting documentation.

31. SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

    **2.**    **The Role of the Claimants**

32. Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33. Each of the claimants, including Defendant Sea Bright, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34. As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Sea Bright represented that Defendant Tucci was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Sea Bright's claims.

35. As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Sea Bright represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

36. Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Sea Bright made sixteen (16) separate withholding tax refund claims and represented that it was entitled to refunds totaling at least $4,646,000 (US). These refund claims were submitted to SKAT on the following dates: May 7, 2015 and May 20, 2015.

37. In fact, Defendant Sea Bright did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38. Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Sea Bright on the following dates: July 1, 2015 and July 13, 2015.

### 3. The Role of the Claimants' Authorized Representatives

39. Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

40. Defendant Tucci executed at the direction of, and on behalf of, Defendant Sea Bright a "Power of Attorney" dated March 17, 2015, that granted to Payment Agent Goal authority "to be the attorney of [Sea Bright] and in [Sea Bright's] name and otherwise on [Sea Bright's]

9

behalf and as [Sea Bright's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Sea Bright] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Sea Bright] or through [Goal] on behalf of [Sea Bright]."

41. Defendant Tucci signed Power of Attorney documents as the Authorized Representative for at least 27 of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Sea Bright.  In addition to signing the "Power of Attorney" document for Defendant Sea Bright on or about March 17, 2015, Tucci also signed Power of Attorney documents on behalf of at least 23 other claimants on March 17, 2015.

### 4. The Role of the Payment Agents

42. The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

43. By means of the Power of Attorney described in paragraphs 39-40 above, each claimant authorized its respective Payment Agent to act on behalf of, and subject to control of, the claimant with respect to submitting the withholding tax refund claims.

44. With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

45. In connection with each Claim Form, the Payment Agent:

    a. provided its email address as the contact address for the claimant on whose behalf it was acting;

    b. signed and stamped the form, and stated it was applying on behalf of the claimant;

      c.    enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.    requested that SKAT pay the claim to its bank account.

46.    As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants. On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5. The Role of the Broker-Custodians

47.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

48.    By way of example, with respect to Defendant Sea Bright, one example of a "credit advice":

      a.    is made out by West Point Derivatives Ltd;

      b.    is dated March 31, 2015;

      c.    purports to certify Defendant Sea Bright's ownership of 176,980 shares in Carlsberg AS-B (a genuine company), and whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.    states an International Securities Identification Number ("**ISIN**") for Carlsberg AS-B shares as "DK0010181759". An ISIN is a twelve character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

49. Defendant Sea Bright never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

50. In the course of its investigation, in or around August 2015, SKAT concluded that many of the withholding tax refund claims that had been made in the preceding years, including claims by Defendant Sea Bright, were fraudulent and SKAT suspended further payments.

## CAUSES OF ACTION

## COUNT I

**(Fraud – Against Both Defendants)**

51. SKAT repeats and realleges paragraphs 1 through 50 above as if fully set forth herein.

52. Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36, and 47 through 49 to support claims for withholding tax refund payments.

53. Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

54. In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of at least $4,646,000 (US) and thereby suffered damages of that amount, plus interest.

55. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against Both Defendants)

56. SKAT repeats and realleges paragraphs 1 through 55 above as if fully set forth herein.

57. As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

58. As alleged in paragraphs 25 through 49 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

59. The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

60. The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 49 above.

61. As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

62. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Unjust Enrichment – Against Both Defendants)

63. SKAT repeats and realleges paragraphs 1 through 62 above as if fully set forth herein.

64. This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

65. By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

66. SKAT suffered a loss because of the Defendants' unjust enrichment.

67. The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT IV

### (Money Had & Received – Against Both Defendants)

68. SKAT repeats and realleges paragraphs 1 through 67 above as if fully set forth herein.

69. As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

70. It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT V

### (Negligent Misrepresentation – Against Both Defendants)

71. SKAT repeats and realleges paragraphs 1 through 70 above as if fully set forth herein.

72. Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

73. Defendants made material misstatements described in paragraphs 28-29, 36, and 47 through 49 above in connection with every withholding tax refund claim submitted on behalf of

14

Defendant Sea Bright to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

74. Defendants' material misstatements were intended to induce SKAT to rely upon them, and defendants expected SKAT to rely upon them.

75. SKAT reasonably relied on the misstatements while reviewing defendants' claims, and as a direct and proximate result incurred damages of at least $4,646,000 (US), plus interest.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1. For Counts I, II and V, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2. For Counts III and IV, for unjust enrichment and money had and received, the damages sustained or the amounts by which the Defendants were unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3. For Counts I and II, punitive damages.

4. The costs of this action.

5. All other and further relief that is just and proper.

15

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

                          Respectfully submitted,

                          Hughes Hubbard & Reed LLP
                          A New York Limited Liability Partnership

                          By:   /S/ Eric Blumenfeld
                          Eric Blumenfeld
                          101 Hudson Street, Suite 3601
                          Jersey City, New Jersey 07302
                          Telephone:  201-536-9220
                          Eric.Blumenfeld@hugheshubbard.com

                          Jennifer Suh
                          One Battery Park Plaza
                          New York, NY  10004
                          Telephone:  212-837-6000
                          Jennifer.Suh@hugheshubbard.com

                          Of Counsel

                          William R. Maguire *(Pro Hac Vice Application to be submitted)*
                          Marc A. Weinstein *(Pro Hac Vice Application to be submitted)*
                          Sarah L. Cave *(Pro Hac Vice Application to be submitted)*
                          John McGoey *(Pro Hac Vice Application to be submitted)*
                          HUGHES HUBBARD & REED LLP
                          One Battery Park Plaza
                          New York, NY  10004
                          Telephone:  212-837-6000

                          Counsel for Plaintiff SKAT (Customs and Tax Administration of the Kingdom of Denmark)

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned, Eric Blumenfeld, hereby certifies pursuant to 28 U.S.C. § 1746 that the matter in controversy is subject to the following actions which are to be filed in this Court today:

- SKAT v. The Balmoral Management LLC 401K Pension Plan and John LaChance;

- SKAT v. The Beech Tree Partners 401K Plan and Matthew Tucci;

- SKAT v. The Blackbird 401K Plan and Matthew Tucci;

- SKAT v. The Chambers Property Management LLC 401K Plan and Matthew Tucci;

- SKAT v. Fiftyeightsixty LLC Solo 401K Plan and Matthew Tucci;

- SKAT v. The Hawk Group Pension Plan and Matthew Tucci;

- SKAT v. The Hibiscus Partners LLC 401K Plan and Matthew Tucci;

- SKAT v. The Maple Advisors LLC 401K Plan and Matthew Tucci;

- SKAT v. OneZeroFive LLC Solo 401K Plan and Matthew Tucci;

- SKAT v. The Robin Daniel Pension Plan and Matthew Tucci;

- SKAT v. The Tag Realty Advisors LLC 401K Plan and Matthew Tucci; and

- SKAT v. The Throckmorton Advisors 401K Plan and Matthew Tucci.

And the following, which were filed in this Court on May 18, 2018:

- SKAT v. The Everything Clean LLC 401K Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-09439-FLW-LHG;

- SKAT v. The Jump Group LLC 401K Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-09442-FLW-LHG;

- SKAT v. The Oaks Group Pension Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-09444-FLW-LHG; and

- SKAT v. The Wave Maven LLC 401K Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-09445-FLW-LHG.

84086261_2

And the following, which were filed in this Court on May 4, 2018:

- SKAT v. American Investment Group of N.Y., L.P. Pension Plan and Stacey Kaminer, D.N.J. Civil Action No. 2:18-cv-08876-JLL-SCM;

- SKAT v. The Cardinal Consulting Pension Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08878-FLW-LHG;

- SKAT v. The Crow Associates Pension Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08881-FLW-LHG;

- SKAT v. The Egret Associates LLC 401K Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08880-FLW-LHG;

- SKAT v. The Heron Advisors Pension Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08882-FLW-LHG;

- SKAT v. The Hoboken Advisors Pension Plan and Matthew Tucci, D.N.J. Civil Action No. 2:18-cv-08883-JLL-SCM;

- SKAT v. The Jayfran Blue Pension Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08884-FLW-LHG;

- SKAT v. The JT Health Consulting LLC 401K Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08885-FLW-LHG;

- SKAT v. The Lakeview Advisors 401K Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08886-FLW-LHG;

- SKAT v. The Osprey Associates LLC 401K Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08887-FLW-LHG;

- SKAT v. The Sandpiper Pension Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08888-FLW-LHG; and

- SKAT v. The Zen Training LLC 401(K) Plan and Matthew Tucci, D.N.J. Civil Action No. 3:18-cv-08889-FLW-LHG.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on:  June 1, 2018

    /s/     Eric Blumenfeld
        Eric Blumenfeld